UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANTHONY CONGELLO,<br><br>    Plaintiff,<br><br>    v.<br><br>HARRAH'S OPERATING COMPANY LLC,<br>d/b/a HARRAH'S RESORT ATLANTIC<br>CITY, *et al.*,<br>    Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:21-cv-09525-KMW-EAP<br><br>**OPINION** |

**Andrew R. Bronsnick, Esq.**
MANDELBAUM BARRETT, PC
3 Becker Farm Road
Suite 105
Roseland, NJ 07068
*Counsel for Plaintiff Anthony Congello.*

**Anthony Giordano , Jr., Esq.**
**Damian S. Jackson, Esq.**
REILLY, MCDEVITT & HENRICH, P.C.
3 Executive Campus
Suite 310
Cherry Hill, NJ 08002
*Counsel for Defendant Harrah's Operating Company LLC, doing business as, Harrah's Resort Atlantic City*

**WILLIAMS, District Court Judge:**

### I. INTRODUCTION

    This matter comes before the Court by way of the Motion of defendant Harrah's Atlantic City Operating Company, doing business as Harrah's Resort Atlantic City, ("Harrah's") for summary judgment pursuant to Federal Rule of Civil Procedure 56 on negligence claims brought by plaintiff Anthony Congello ("Congello"). Congello opposes Harrah's Motion. After briefing had concluded, this matter was reassigned for administrative purposes. (ECF No. 54.) For the reasons set forth below, the Court denies Harrah's motion for summary judgment pursuant to Rule 56 ("Motion").

## II. BACKGROUND[1]

Harrah's seeks the entry of summary judgment in this case on negligence claims brought by Congello arising out of a near-collision between a Harrah's Total Rewards Express Bus ("TRE Bus") and another vehicle on May 4, 2019 in Atlantic City, New Jersey. Congello was a passenger on the TRE Bus that day when it was transporting casino patrons from Harrah's to other properties owned by Caesars Holdings, Inc.[2] (Def. SUMF ¶ 3; Pl. Resp. SMF ¶ 3.) Tonya Dennis, a Harrah's employee with eight (8) years of experience working in the transportation industry,[3] was the driver of the TRE Bus the day of the near collision. (Def. SUMF ¶ 4; Pl. Resp. SMF ¶ 4.) A short time after Congello boarded, Dennis was driving the TRE Bus down Baltic Avenue until she got to Missouri Avenue, where she made a left-hand turn. (Def. SUMF ¶ 6; Pl. Resp. SMF ¶ 6.) The TRE Bus was properly in the left-hand turn lane at the time Dennis made the left onto Missouri Avenue. (Def. SUMF ¶ 7; Pl. Resp. SMF ¶ 7.) Dennis testified at her deposition that while she was making the turn, "another vehicle that was next to [the TRE Bus] that was not supposed to turn[,] turned in front of [the TRE Bus] . . . out into the middle of Missouri Avenue." (Pl. CSMF ¶ 2) (citing Jackson Cert., Ex. D (ECF No. 49-4), Tonya Dennis Dep. Tr., 24:6-10); (Def. Resp. CSMF ¶ 2.) When Dennis applied the brakes to avoid hitting that vehicle, the TRE Bus stopped

---

[1] The background facts set forth in this Opinion are not in dispute, unless otherwise noted. These facts are primarily taken from Harrah's Statement of Undisputed Material Facts (ECF No. 49 at 6-8 ("Def. SUMF")), Congello's response thereto (ECF No. 51 at 2-3 ("Pl. Resp. SMF")), Congello's Counterstatement of Material Facts (ECF No. 51 at 3-4 ("Pl. CSMF")), Harrah's response thereto (ECF No. 52 at 1-2 ("Def. Resp. CSMF")), the Certification of Harrah's counsel, Damian S. Jackson, Esq. (ECF No. 49 at 4-5 ("Jackson Cert.")), and the exhibits thereto. Unless otherwise noted, pin cites to these documents refer to the pagination automatically generated by the Court's electronic filing system.

[2] Congello originally named Caesars Entertainment as a defendant in this matter. In the Notice of Removal, counsel for Harrah's explained that Caesars Entertainment is "not a viable entity." (ECF No. 1 ¶ 15(d)). Rather, Harrah's is a limited liability company with a sole member – Caesars Holdings, Inc. *See id.* at ¶ 15(c). The remainder of this Opinion will refer solely to Harrah's.

[3] Harrah's employed Dennis as a shuttle driver since approximately 2018, including on May 4, 2019. (Pl. CSMF ¶ 1.)

2

abruptly, and Congello was propelled forward into the seat in front of him and suffered injuries. (Def. SUMF ¶¶ 12-13; Pl. CSMF ¶ 13); (Pl. CSMF ¶ 8) (citing Jackson Cert., Ex. C (ECF No. 49-3), Anthony Congello Dep. Tr., 36:16-37:19). At the time of the incident, the TRE Bus did not have functional seat belts for passengers like Congello. (Pl. CSMF ¶ 7; Def. Resp. CSMF ¶ 7.)

The parties dispute several facts related to this near-collision, including the manner in which Dennis operated the TRE Bus while driving that day. Dennis testified that the TRE Bus was cut off by another vehicle that made an illegal left in front of it from a non-turning lane causing her to slam on the brakes to avoid a collision as that vehicle tried to get over to the left-hand side of Missouri Avenue. (Jackson Cert., Ex. D (ECF No. 49-4), Tonya Dennis Dep. Tr., 24:4-13, 28:21-25, 29:1-2). Harrah's argues that "[t]here is no evidence whatsoever that . . . Dennis was negligent in her operation of the bus" and claims that the "undisputed facts show that . . . Dennis acted as a reasonable drive to avoid a near-collision." (ECF No. 49 at 9-10.) However, Congello, testified that at some point after he got on the bus, Dennis "stopped paying attention to the road," and that he remembered that Dennis "was driving fast and . . . that she . . . slammed on the brakes, pulled the wheel and [the TRE Bus] went almost like at a spin[.]" (Jackson Cert., Ex. C (ECF No. 49-3), Anthony Congello Dep. Tr., 24:14, 20-24). When asked if he knew how fast Dennis was driving when the incident occurred, Congello testified that he did not know her exact speed, but he knew Dennis "was moving pretty fast."[4] *Id.* at 30:25-31:3. Congello further testified that Dennis "just lost control of the wheel" and "swerved out of the way" and "slammed on the brakes" to avoid hitting the other vehicle. *Id.* at 31:8-14.

---

[4] Dennis testified that she was going "maybe 30, 31 miles an hour" when she realized the other vehicle was crossing in front of the TRE Bus and acknowledged that the speed limit in that area is 25 miles per hour. (Jackson Cert., Ex. D (ECF No. 49-4), Tonya Dennis Dep. Tr., 30:20-31:2).

3

Additionally, relying solely on Dennis's testimony, Harrah's presents it as undisputed that Dennis did not use her cell phone at any point during the entirety of the TRE Bus trip on May 4, 2019. (Jackson Cert., Ex. D (ECF No. 49-4), Tonya Dennis Dep. Tr., 37:10-14). Dennis testified that she did not use her cell phone at all from the time she initially acquired her passengers until the time she parked the TRE Bus at Caesars and contacted security regarding the incident. *Id.* at 37:10-19. Dennis explicitly testified that she did not use her cell phone until the point she parked the TRE Bus at Caesars, well after the near-collision. Dennis also testified that while Caesars has a policy that cell phones should not be used, the use of a cell phone is expressly permitted in certain situations, including when "dispatch calls . . . or another driver calls . . . in regards to the job itself." *Id.* at 44:12-18. Dennis further testified that while she "usually puts [the phone] on speaker" for these kind of calls, she also sometimes puts the phone to her ear. *Id.* at 44:19-24.

In direct contrast, Congello testified that Dennis was on her cell phone when he got on the TRE Bus and at the time of the accident. When Congello was first asked to describe what happened on May 4, 2019, he testified that he "got on the bus" and found Dennis was "driving, you know, the way she usually does, you know, . . . driving the way she always does on the cell phone . . .". (Jackson Cert., Ex. C (ECF No. 49-3), Anthony Congello Dep. Tr., 24:5-15). Later in his deposition, counsel specifically asked Congello if it was "accurate" that "the bus drive was on her cell phone at the time of the accident[.]" *Id.* at 33:22-23. Congello responded, "Yeah, she's always on it." *Id.* at 33:24. Congello later clarified that he did not see the cell phone in Dennis's hand at the time of the incident but that he heard Dennis talking on the phone at that time and that she was talking to someone other than the passengers. *Id.* at 33:25-34:12.

4

## III. LEGAL STANDARD

A court may grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be

5

drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (citing *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505).

## IV. DISCUSSION

To succeed on a claim for negligence under New Jersey law,[5] a plaintiff must show that: 1) the defendant owed a duty of care to the plaintiff; 2) the defendant breached said duty of care; and 3) the defendant's breach was the proximate cause of an injury to the plaintiff. *Polzo v. Cty. of Essex*, 196 N.J. 569, 584, 960 A.2d 375, 384 (N.J. 2008). "Negligence is never presumed and the mere happening of an accident, standing alone, will not support an inference of negligence[.]" *Crisciotti v. Greatrex*, 9 N.J. Super. 26, 28, 74 A.2d 611, 612 (App. Div. 1950). The driver of an automobile has a duty to use reasonable care in the control, management, and operation of his or her vehicle, and that driver is required to exercise such care so as to avoid collision or injury to others on the highway. *Goldstone v. Tuers*, 189 N.J. Super. 167, 459 A.2d 691, 692 (App. Div. 1983). Drivers may assume that others will observe the proper standard of conduct, and, for that reason, the duty of reasonable care between drivers upon highways is mutual. *See Tichenor v. Santillo*, 218 N.J. Super. 165, 170, 527 A.2d 78, 81 (App. Div.1987). "As a general matter, a driver's use of a handheld cellular telephone while driving is relevant to the issue of his or her negligence." *Scianni v. Suriano*, No. A-4415-O5T5, 2007 WL 506206, at *2-*3 (N.J. Super. Ct. App. Div. Feb. 20, 2007) (citing *O'Toole v. Carr*, 345 N.J. Super. 559, 566 (App. Div. 2001),

---

[5] Harrah's removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. As a federal court sitting in diversity, this Court must apply the relevant state's substantive law, which in this case is New Jersey. *Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007).

*aff'd*, 175 N.J. 421 (2003) for the proposition that cell phone use at the time of an accident may constitute negligence giving rise to liability).

It is generally true that sometimes "during the course of traffic[,] a non-negligent driver will be forced to brake quickly to avoid an accident." *See Imable-Mayorga v. Labrie*, No. 09-3567 WHW, 2011 WL 3203741, at *4 (D.N.J. July 27, 2011) (applying New Jersey law). In such circumstances, "[n]o reasonable fact finder could equate stopping suddenly in and of itself with negligence." *Id.* For an abrupt and sudden stop "to constitute negligence, there must be some evidence that the sudden stop was unreasonable." *Id.* Harrah's argues Dennis "acted as a reasonable motor vehicle operator would have acted in this situation and applied the brakes at the moment she was cut off by the unidentified vehicle" that made an illegal left-hand turn from a non-turning lane. (ECF No. 49 at 10-11.) Harrah's asserts that even when viewing the facts in the light most favorable to Plaintiff, Congello "has not created an issue of material fact" with respect to whether Dennis was negligent in her operation of the TRE Bus on May 4, 2019 when she slammed on her brakes to avoid a collision with another vehicle. The Court, however, disagrees.

Both sides have proffered facts respectively detracting from and supporting the reasonableness of Dennis's operation of the TRE Bus. As cited above, Congello testified that Dennis was "moving pretty fast", "lost control of the wheel", and "swerved" at the time of the incident, causing the TRE Bus to sort of spin. He also testified that Dennis was on her cell phone when he got on the bus, and he heard her talking on it at the time of the incident. Dennis's testimony is diametrically opposed to that of Congello. She testified that she did not use her cell phone at any time while there were passengers onboard prior to calling security while parked at Caesars well after the incident, and she makes no mention of swerving or turning her wheel to avoid hitting the other vehicle. Taken as true, and drawing all justifiable inferences in his favor,

Congello's testimony raises a genuine issue of material fact as to whether Dennis breached a duty of care by negligently operating the TRE Bus at the time of the incident. Specifically, Congello raises genuine issues of fact that bear upon the reasonableness of Dennis's operation of the TRE Bus which are material to the outcome of this case and are best left for the jury to weigh against the evidence Harrah's put forth. In order to resolve these factual disputes, the Court would have to weigh the credibility of Dennis's testimony as compared to Congello and impose its own judgment in place of that of the jury. Such an endeavor is inappropriate on summary judgment. While a reasonable fact finder may not ultimately find in Congello's favor at trial, genuine issues of material fact remain regarding whether Dennis was negligent in the operation of the TRE Bus at the time of the near-collision which preclude the entry of summary judgment. These issues include whether, at the time of the incident, Dennis was using her cell phone and became distracted, was driving too fast, failed to maintain control of the wheel, or otherwise failed to use reasonable care while driving the TRE Bus. Thus, Harrah's Motion is denied.

## V. CONCLUSION

For all of the reasons articulated above, the Court denies Harrah's Motion.

Dated: December 17, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE